**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LEONARD JOHNSON                    CIVIL ACTION NO. 11-cv-01151

VERSUS                            SECTION "C"

BURL CAIN                         HON. HELEN BERRIGAN

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**ORDER AND REASONS[1]**

This matter is before the Court on a petition filed by Leonard Johnson (hereinafter "Mr.

Johnson"), seeking *habeas corpus* relief pursuant to 28 U.S.C. § 2254. The Magistrate Judge

recommended that Mr. Johnson's petition be dismissed as time-barred, and Mr. Johnson

submitted objections. Rec. Docs. 52, 53. The Court, having considered the petition, the record,

the applicable law, the Report and Recommendation, and the petitioner's objections, hereby

rejects the Report and Recommendation of the United States Magistrate Judge. For the reasons

given below, the Court sustains the petitioner's objections and grants *habeas corpus* relief.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The procedural history in this case is extremely convoluted. The Court will do its best to

describe the circumstances, focusing on the points most relevant to the Magistrate Judge's

Report and Recommendations and this Court's review.

### A.  Trial and conviction

Petitioner, Leonard Johnson, is a state prisoner incarcerated at the Louisiana State

Penitentiary in Angola, Louisiana. Mr. Johnson admits that on August 3, 1974 he shot Ira Bodere

---

[1] Hannah Adams, a third-year student at Northeastern University School of Law, assisted in the
preparation of this Order and Reasons.

and Richard McClarity during an argument at a swimming pool in New Orleans. State Rec. Vol. 2 of 8, Tr. 17. Mr. McClarity was killed. Mr. Johnson's defense at trial was that in the heat of the moment he shot at Mr. Bodere to defend his brother, who had been knocked down by Mr. Bodere, and that a bullet aimed at Mr. Bodere hit Mr. McClarity. State Rec. Vol. 2 of 8, Tr. 20. At trial, the jury heard testimony from Mr. Bodere contradicting Mr. Johnson's version of events. State Rec. Vol. 2 of 8, Tr. 104-10. Mr. Bodere also admitted at trial that he was a drug addict under the influence of heroin at the time of the incident. State Rec. Vol. 2 of 8, Trial Tr. 126. On March 15, 1978, the jury deliberated for at least ten hours. The jury returned twice to ask the judge for further instructions, and initially informed the judge that they were unable to come to a consensus, before finding Mr. Johnson guilty of second degree murder on May 27, 1976. State Rec. Vol. 2 of 8, Tr. 202. On June 2, 1976 he was sentenced to a term of life imprisonment. State Rec. Vol. 1 of 8, minute entry dated June 2, 1976. The Louisiana Supreme Court (hereinafter "LASC") affirmed his conviction and sentence on March 15, 1978. *State v. Johnson*, 356 So.2d 421 (La. 1978). Mr. Johnson argues that his conviction of second degree murder, rather than conviction of the lesser crime of manslaughter or acquittal, resulted from constitutional errors that contaminated his trial. Rec. Doc. 44 at 4.

**B.  First petition for federal *habeas corpus* relief and state out-of-time appeal**

Mr. Johnson first sought *habeas corpus* relief in this Court in 1988. This Court's denial was reversed on appeal, and on remand the Court ruled that relief would be granted unless the state afforded Mr. Johnson an out-of-time appeal. State Rec. Vol. 1 of 8; *Johnson v. Smith*, Civ. Action No. 88-905 (E.D. La. Sept. 26, 1990). An out-of-time appeal was granted. On April 30, 1992 the Fourth Circuit affirmed Mr. Johnson's conviction and sentence and on July 1, 1994 the LASC denied his writ application. State Rec. Vol. 2 of 8; *State v. Johnson*, 598 So.2d 1288 (La.

App. 4th Cir. 1992); *State ex rel. Johnson v. State*, 639 So. 2d 1176 (La. 1994).

### C.   State post-conviction relief ("PCR") process

On May 14, 1996 Mr. Johnson filed a *pro se* Application for Post-Conviction Relief (hereinafter "1996 PCR application"). In the application, Mr. Johnson argued that the jury had been given instructions on reasonable doubt that had been deemed reversible error by the U.S. Supreme Court in *Cage v. Louisiana*, 498 U.S. 39 (1990). In addition, Mr. Johnson stated a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) because the State had failed to disclose a conflicting account of the crime given by Mr. McClarity, the State's sole eyewitness at trial, shortly after the shooting. Rec. Doc. 44-1 at 6-19; State Rec. Vol. 3 of 8. At the center of this case is the question of when, if ever, this application was disposed of by the state courts. On July 2, 1996, the state district court denied a motion to correct an illegal sentence filed prior to the 1996 application, titling its order "Judgment on Motion to Correct an Illegal Sentence." Rec. Doc. 44-1 at 21; State Rec. Vol. 3 of 8.[2] In the absence of a state court judgment on the 1996 PCR application, Mr. Johnson applied several times to the LASC in 1997, 1998, and 1999 for Writs of Mandamus ordering the district court to rule on the application, and attaching the 1996 PCR application. State Rec. Vol. 3-4 of 8; *Johnson v. State*, No. 97-KH-0349 (filed 2/7/97); *Johnson v. State*, No. 98-KH-2910 (filed 11/23/98); *Johnson v. State*, No. 98-KH-2910 (filed 4/13/99). In October 1997 the LASC ordered the district court to take action on the 1996 application, but the district court failed to comply. State Rec. Vol. 3 of 8; *Johnson v. Cain*, 701 So.2d 1349 (La. 10/17/97). In January 1999 the LASC again ordered the district court to take action and provide the Supreme Court with a copy of the judgment. *State ex rel. Johnson v. State*, 734 So. 2d 647 (La. 1/8/99).

---

[2] Judge Frank Marullo at the Orleans Parish Criminal District Court presided over all state court post-conviction proceedings in this case.

Meanwhile, in February 1999 Mr. Johnson filed a supplemental PCR application, adding an argument for retroactive application of *Cage* based on the recently-decided case *Humphrey v. Cain*, 138 F.3d 552 (5th Cir. 1998). Rec. Doc. 44-1 at 23-32; State Rec. Vol. 4 of 8. On October 21, 1999 the state criminal court responded to the LASC's January 1999 order by stating that it had already ruled on the application in question, mistakenly attaching its July 2, 1996 ruling on the motion to correct illegal sentence. Rec. Doc. 44-1 at 34; State Rec. Vol. 4 of 8. The court indicated that the attached judgment on the illegal sentence issue resolved the unrelated *Cage* issue. *Id.* The court went on to analyze the *Humphrey* argument from Mr. Johnson's 1999 supplemental petition, ultimately deciding to withhold judgment pending the disposition of a relevant case in the LASC. *Id.* The October 1999 trial court document does not reference the 1996 PCR application.

Under the assumption that there was still no ruling on his 1996 PCR application, Mr. Johnson applied again to the LASC for a Writ of Mandamus and was denied in February 2000. State Rec. Vol. 4 of 8; *Johnson v. Cain*, No. 98-KH 2910 (filed 1/13/00); *State ex rel. Johnson v. State*, 754 So. 2d 956 (La. 2/18/00). At that point Mr. Johnson applied for supervisory writs to the Louisiana Fourth Circuit Court of Appeals. The Fourth Circuit denied the petitioner's application on October 1, 2001 (hereinafter "2001 writ denial"). State Rec. Vol. 4 of 8; *State v. Johnson*, No. 2000-K-2511 (La. App. 4th Cir. 1/10/01). In its listed reasons, the Fourth Circuit stated that Mr. Johnson's *Brady* and *Cage* claims were unreviewable because they were procedurally barred by Louisiana's two-year statute of limitations for post-conviction claims. *Id.* On November 2, 2001, the LASC denied the writ without reasons. State Rec. Vol. 4 of 8; *State ex rel. Johnson v. State*, 800 So.2d 871 (La. 11/2/01). Following the writ denial, Mr. Johnson claims that his 1996 PCR application was still pending. Rec. Doc. 44 at 17.

4

On December 30, 2003 Mr. Johnson again supplemented his application for post-conviction relief with new claims. State Rec. Vol. 5 of 8, letter dated 3/14/04. Following the state district court's failure to respond to the 2003 supplement, Mr. Johnson sent a letter to the trial court inquiring about the status of his post-conviction application. State Rec. Vol. 5 of 8. He also applied for another Writ of Mandamus from the LASC to force the trial court to act on his application. *Id.*; *Johnson v. State*, No. 05-KH-1207 (served 8/30/04, filed 5/9/05). On June 9, 2005, the LASC ordered the District Court to act on the Mr. Johnson's 2003 application. *Id.*; *Johnson v. State*, 902 So. 2d 1058 (La. 6/9/05). Having heard nothing from the trial court, in July 2007 Mr. Johnson applied for yet another Writ of Mandamus from the LASC. *Id.*; *Johnson v. State*, No. 05-KH-1207 (filed 7/20/07). On October 29, 2008, the district court wrote the LASC a letter stating that it could not act on the 2003 application because "the only request contained in the record regards applicant's motion to correct an illegal sentence, which was denied on July 02, 1996." *Id.* Later, in 2011, Mr. Johnson was informed by the state trial court that his closed case file may have been destroyed in Hurricane Katrina. State Rec. Vol. 8 of 8, letter dated 9/16/11.

In April 2009 the petitioner was finally appointed counsel, and in October 2009 Judge Marullo heard oral arguments on Mr. Johnson's *Cage* claims.[3] In the hearing, Judge Marullo stated in the record that Mr. Johnson "is not procedurally barred from going forward because there was never a ruling in this Court on the post-conviction application as to the one filed on May the 14th, 1996," which was timely filed. Rec. Doc. 44-1 at 52. The state appealed this determination, and the Fourth Circuit reversed on January 25, 2010. The panel held that Judge

---

[3] Adding to the confusion, the Court addressed Mr. Johnson's claims under two separate *Cage* cases in the hearing: *Cage v. Louisiana*, 498 U.S. 39 (1990) (concerning unconstitutional jury instructions and raised initially in the 1996 PCR application), and *State v. Cage*, 337 So. 2d 1123 (La. 1976) (concerning unconstitutional jury selection and raised initially in the 2003 supplemental PCR application).

Marullo was incorrect in his determination that he had not previously ruled on the 1996 application. State Rec. Vol. 6 of 8; *State v. Johnson*, No. 2009-K-1689 (La. App. 4th Cir. 1/25/10). The Fourth Circuit opinion also stated that there was nothing in the record to indicate that the 1996 application was, in fact, filed. *Id.* The LASC denied writs on November 19, 2010. State Rec. Vol. 6 of 8; *State v. Johnson*, 49 So. 3d 398 (La. 11/19/10).

### D.  Second petition for federal *habeas corpus* relief

Mr. Johnson filed the instant petition for *habeas corpus* pursuant to 28 U.S.C. § 2254 on May 17, 2011. Rec. Doc. 1. In March 2012 this Court dismissed the petition without prejudice for failure to seek leave from the Fifth Circuit for a second or successive petition under 28 U.S.C. § 2244(b)(3)(A). Rec. Doc. 16, 18, 19. In August 2012 the Fifth Circuit granted leave, holding that it was not "second or successive." Rec. Doc. 35; *In re. Johnson*, 483 Fed. App'x 922 (5th Cir. 2012).[4] Mr. Johnson's May 2011 petition for *habeas corpus* relief was then refiled in November 2012. Rec. Doc. 44.

## II.      STANDARD OF REVIEW & APPLICABLE LAW

### A.  Standard of Review

This Court reviews *de novo* those portions of the Magistrate Judge's Report and Recommendations to which the petitioner has objected. 28 U.S.C. § 636(b)(1).

---

[4] Traditional principles of *res judicata* are inapplicable to successive habeas corpus proceedings. *Smith v. Yeager*, 393 U.S. 122, 124 (1968). However AEDPA bars a "second or successive" petition from district court review. 28 U.S.C. § 2244(b)(2). Here, the Fifth Circuit held that Mr. Johnson's current petition is not second or successive because precedent barring review of available claims not raised in an initial habeas petition that led to an out-of-time appeal is inapplicable. Rec. Doc. 35; *In re. Johnson*, 483 Fed. App'x 922 (5th Cir. 2012). In the "limited situation, in which a state court grants an applicant an out-of-time appeal and addresses a claim on the merits that was not raised in the applicant's initial habeas application, the subsequent habeas application in federal court challenging the state court's decision on that claim is not successive." *Id.* at 925-26.

**B.  The Antiterrorism and Effective Death Penalty Act of 1996**

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA")

establishes a one-year statute of limitations for the filing of federal *habeas corpus* applications.

Petitioners whose convictions became final prior to AEDPA's effective date of April 24, 1996

were afforded a one-year grace period until April 24, 1997 to file. *See Fisher v. Johnson*, 174

F.3d 710, 712 (5th Cir. 1999). The method for calculating a petitioner's one-year period is set out

in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Thus after the petitioner's conviction becomes final, the statute of limitations tolls during the

pendency of any State post-conviction or other collateral review pursuant to § 2244(d)(2), and

during the pendency of any unconstitutional state-created impediment pursuant to §

2244(d)(1)(B).

AEDPA also provides that the federal court cannot grant habeas corpus relief on any

claim adjudicated on the merits in a state court proceeding unless that adjudication "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

7

Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d). A state court decision involves an unreasonable application of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014) (internal quotations omitted). For claims that were not adjudicated on the merits in the state court, this Court applies a de novo standard of review. *Solis v. Cockrell*, 342 F.3d 392, 394 (5th Cir. 2003).

### III.    TIMELINESS

On May 2, 2014 Magistrate Judge Knowles recommended that Mr. Johnson's petition be dismissed with prejudice as time-barred. Judge Knowles determined that statutory tolling under AEDPA ceased on November 2, 2001 when the LASC denied the petitioner's writ application challenging the Fourth Circuit's February 2001 writ denial. Rec. Doc. 52 at 11. Therefore the AEDPA deadline was one year later, on November 4, 2002. *Id.* The Judge reasoned that on November 2, 2001 the state courts "*disposed* of [the application] *rightly or wrongly*" and therefore "they were no longer 'pending' for the purposes of tolling . . . ." Rec. Doc. 52 at 10 (emphasis in original).

Mr. Johnson filed timely objections to the Report and Recommendations, objecting generally to the dismissal of his petition and specifically to the findings of law and fact in the Report and Recommendation. Rec. Doc. 53 at 2. Mr. Johnson argues, for a number of reasons, that his 1996 application was not disposed of in 2001, and that it remained pending until November 2010. Rec. Doc. 53 at 5-6. Therefore, Mr. Johnson argues, his petition for federal *habeas corpus* was timely filed and should be considered on the merits.

The Court disagrees with the Magistrate Judge, and finds that Mr. Johnson's writ of *habeas corpus* was timely filed. Mr. Johnson was entitled to both statutory and equitable tolling of AEDPA's statute of limitations, as articulated herein.

**A.   Statutory Tolling**

Mr. Johnson is entitled to statutory tolling under both 28 U.S.C. § 2244(d)(2) and § 2244(d)(1)(B) because of (a) the pendency of his state post-conviction review, and (b) the pendency of a state-created impediment to filing his petition for federal *habeas corpus* relief.

**i.   The AEDPA state of limitations tolled until November 19, 2010, as Mr. Johnson's state post-conviction review was pending until that date.**

AEDPA specifies that the one-year statute of limitations for habeas corpus petitions tolls during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . ." 28 U.S.C. § 2244(d)(2); *see also Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769 (5th Cir. 2004). An application for state post-conviction relief remains pending while it is "not yet decided," or "until the application has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (internal citations omitted).

When a petitioner is granted an out-of-time appeal, his state criminal judgment is not final until the date on which the state decision on an out-of-time appeal became final by the conclusion of direct review or the expiration of the time for seeking such review. *See Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009). Therefore, Mr. Johnson's state criminal judgment became final for AEDPA purposes on September 29, 1994, ninety days after the LASC denied relief on direct review. *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). At that point, the clock began to run on the AEDPA statute of limitations. However, the statute of limitations had already begun tolling because Mr. Johnson filed a Motion to Correct an Illegal sentence on or

9

around March 9, 1993.[5] That motion was denied on July 2, 1996. State Rec. Vol. 3 of 8. Because

Mr. Johnson did not seek supervisory review of that denial, the tolling ceased on August 1, 1996,

when his time expired for seeking review of that denial by filing a writ application with the

Fourth Circuit Court of Appeal.

However, at that point, tolling had begun again pursuant to Mr. Johnson's 1996 PCR

application, filed on May 14, 1996. *Id*. Tolling continued during the pendency of this application.

At this point, this Court's analysis diverges from that of the Magistrate Judge. Judge Knowles

made his recommendation to dismiss Mr. Johnson's petition as time-barred on the basis of a

January 10, 2001 writ denial by the Louisiana Fourth Circuit, over which the Louisiana Supreme

Court denied supervisory and remedial writs on November 2, 2001. Judge Knowles contends that

this was the date on which the state court "disposed of" Mr. Johnson's application for post-

conviction relief and tolling ceased. Rec. Doc. 52 at 10-11. Accordingly, the Magistrate Judge

recommended a finding that the limitations period expired a year later on November 4, 2002. *Id.*

at 11. This Court disagrees, finding that the 2001 writ denial did not dispose of the 1996 PCR

application for several reasons.

>    a.   **Erroneous application of state procedural bars demonstrates that the Fourth Circuit did not consider the 1996 PCR application in 2001.**

Considering the 2001 Fourth Circuit opinion and the record, this Court finds that the

Fourth Circuit did not consider the 1996 PCR application in 2001. First, the Fourth Circuit held

in its 2001 writ denial that Mr. Johnson's *Brady* and *Cage* claims were time-barred by La.

C.Cr.P. art. 930.8, which imposes a two-year statute of limitations on applications for post-

---

[5] A motion to correct an illegal sentence qualifies as a motion for "other collateral review" for tolling purposes. *See Sampia v. Cain*, No. 99-30694, 2002 WL 31114916, at *4 (5th Cir. Sept. 9, 2002).

conviction relief. Had the court been considering the 1996 PCR application, they would not have raised this argument because Mr. Johnson's conviction became final on September 29, 1994 and his application for post-conviction relief was filed on May 6, 1996, well within the two year limitations period. This discrepancy leads the Court to believe that the Fourth Circuit court assumed that these claims were first raised in Mr. Johnson's 1999 supplemental PCR. Furthermore, the Fourth Circuit stated that Mr. Johnson failed to assert that contemporaneous objections to the jury instructions were made during trial in support of his *Cage* claim. State Rec. Vol. 4 of 8. Had the court been considering the 1996 PCR application, they would have clearly seen that Mr. Johnson *did* raise contemporaneous objections in his application. Rec. Doc. 44-1 at 13.

### b. The state court admitted that the 1996 PCR application was absent from the record as of 2008.

Further evidence that the 2001 writ denial did not dispose of the 1996 PCR application lies in the October 2008 letter written to the LASC from the Criminal District Court admitting that Mr. Johnson's post-conviction applications were absent from the record and "the only request contained in the record regards applicants motion to correct an illegal sentence, which was denied on July 02 1996." State Rec. Vol. 5 of 8.[6] Indeed at a hearing on November 9, 2009 Judge Frank A. Marullo, Jr. confirmed that *he himself* never ruled on the 1996 petition that was filed *in his court*. Rec. Doc. 44-1 at 52. When the Fourth Circuit overturned Judge Marullo in January 2010, the panel admitted that it had no evidence that the 1996 petition was ever filed. Rec. Doc. Vol. 6 of 8.[7]

---

[6] The Court acknowledges that files may have been lost during Hurricane Katrina. At the very least, there is no way for this Court to judge whether the 1996 PCR application was properly filed by the state court since it is absent from their records.

[7] As previously stated Mr. Johnson attached a copy of the 1996 PCR application to his 1997

The state court record indicates that at some point Mr. Johnson's 1996 timely petition for post-conviction relief on the basis of *Brady* and *Cage* was misplaced or misfiled by the criminal district court. Though the state disposed of the *Brady* and *Cage* claims pursuant to Mr. Johnson's supplemental petitions, they were disposed of on procedural grounds that would have been inapplicable had the state courts been aware of the 1996 application. This Court agrees with the Magistrate Judge that it is not the job of the federal courts to determine whether the 1996 PCR application was disposed of "rightly or wrongly" by the state court. (Rec. Doc. 52 at 10). Here, this Court makes no such determination, but rather holds that the 1996 application *was never disposed of at all* because the state admits it has no record of the application, and the relevant state court judgments indicate a lack of awareness of its existence.

Moreover, the closest the state court came to disposing of the 1996 PCR application was on November 19, 2010 when the LASC denied the petitioner's application for a supervisory and/or remedial writ after the Fourth Circuit reversed Judge Marullo's determination that he had never ruled on the 1996 petition. Taking this denial as the date on which the 1996 PCR application was disposed, the AEDPA statute of limitations tolled until November 19, 2010. Mr. Johnson filed his writ of *habeas corpus* in this Court 179 days later, and thus it fell within the one-year limitations period.

> ### ii. The state district court's presumptive failure to properly docket Mr. Johnson's 1996 PCR application represents a state-created impediment that remains unresolved.

In addition to statutory tolling under § 2244(d)(2), this Court finds that Mr. Johnson is entitled to statutory tolling under the state-created impediment provision, § 2244(d)(1)(B).[8] That

---

application for a Writ of Mandamus to the LASC, proving that the 1996 application does, indeed, exist. State Rec. Vol. 3 of 8.

[8] Although Mr. Johnson did not explicitly raise § 2244(d)(2) as a justification for his argument

provision instructs that the statute of limitations does not begin to run until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." To establish a state-created impediment, "the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell,* 334 F.3d 433, 436 (5th Cir.2003).

The Fifth Circuit has recognized that "mishandling prisoner filings constitutes a state impediment under 28 U.S.C. § 2244(d)(1)(B)" sufficient to toll the statute of limitations. *Critchley v. Thaler*, 586 F.3d 318, 318 (5th Cir. 2009). In *Critchley* the petitioner attempted to submit a state *habeas* petition on two occasions, and on both occasions the state district court failed to properly file his application. *Id.* at 319. After receiving notice that neither application was on file, he attempted to file an amended application, which was not properly filed until five months later. *Id.* The state court's failure to properly file his petition resulted in a nearly two-year delay in his pursuit of federal post-conviction remedies. *Id.* The Fifth Circuit held that the state court's error constituted a "state-created impediment" and the petitioner was entitled to statutory tolling until the date on which the state properly filed his petition. *Id.* at 320.

The facts here are substantially similar to *Critchley*. In 2008, the state court admitted that it did not have Mr. Johnson's 1996 PCR application on file, indicating that it may have never been properly docketed. State Rec. Vol. 5 of 8. Even if the absence in the record was attributable to Hurricane Katrina, there is no indication that the state courts were aware of the existence of

---

that statutory tolling applies, he did allege that "due to a mistake on the part of the state district court in 1996, his original and timely application for post-conviction relief was not ruled upon" in his *habeas* petition, and that "the district court lost his petition and failed to rule on it" in his objections to the Magistrate Judge's Report and Recommendations. Rec. Doc. 44 at 10; Rec. Doc. 53 at 3. This Court interprets these arguments to concern a state-created impediment, and will thus analyze them under § 2244(d)(1)(B).

the 1996 PCR application before the 2005 storms; in fact there is every indication that such awareness was lacking. Not knowing that his 1996 application had likely never made its way onto the docket, Mr. Johnson repeatedly attempted to bring the court's attention to the application by filing supplemental briefs and seeking supervisory writs from the appellate and Supreme courts.

Moreover, the presumptive failure of the state court to properly file the 1996 petition unleashed fifteen years of confusion in the state courts that effectively prevented Mr. Johnson from filing his federal *habea*s petition because he was operating under the assumption that he had not yet exhausted his state remedies. As the 1996 PCR application seems to have *never* been properly filed with the state court, the state-created impediment was never corrected. Thus under § 2244(d)(1)(B) the statute of limitations continues to toll, and Mr. Johnson's *habeas* petition filed on May 17, 2011 was timely.

## B.     Equitable Tolling

In addition, Mr. Johnson is entitled to equitable tolling. In 2010 the Supreme Court affirmed that "the timeliness provision in the federal *habeas corpus* statute is subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 634 (2010). Equitable tolling is appropriate where the petitioner demonstrates (1) extraordinary circumstances exist, and (2) he or she exercised diligence in pursuit of *habeas corpus* relief. *Id.* at 649. When exercising its equity powers, the court must apply the law on a case by case basis, with a certain degree of flexibility. *Id.* at 649-50. "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Mathis v. Thaler,* 616 F.3d 461, 474 (5th Cir.2010) (internal quotation marks and citation omitted).

### i.   Mr. Johnson's petition involves extraordinary circumstances.

14

This Court cannot find any cases that involve a petitioner's delayed application for federal *habeas* relief for the reasons present in his case: namely, a convoluted procedural history and lack of clarity from the state courts resulting from their presumptive failure to properly docket petitioner's original application. Instead, the Court finds it instructive to examine a line of cases where the petitioner's federal habeas petition was delayed because the petitioner was not *on notice* that the state court had disposed of his applications for state post-conviction relief.

The Fifth Circuit has held that a lack of notice of final judgment constitutes an extraordinary circumstance sufficient to trigger equitable tolling. In *Phillips v. Donnelly* the court held that a four month delay in notice to the petitioner that his state application had been denied constituted an exceptional circumstance, where the petitioner pursued federal remedies "with diligence and alacrity" immediately upon receiving notice. 216 F.3d 508, 511 (5th Cir. 2000). In an unpublished case from the same year, the court held that although equitable tolling may not apply where the delay results from the petitioner's ignorance of the law, a petitioner's "inability timely to learn the crucial fact that his conviction . . . had become final result[ing] from obstacles beyond his ability to control or remedy" constituted an extraordinary circumstance warranting equitable relief. *Brown v. Johnson*, 239 F.3d 366, at *3 (5th Cir. 2000).

Moreover, equitable tolling applies where the "court has led the plaintiff to believe that she ha[s] done everything required of her." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984) (internal citations omitted). In *United States v. Patterson,* the Fifth Circuit dealt with procedural history similarly convoluted to the present case. 211 F.3d 927 (5th Cir. 2000). In *Patterson* the petitioner filed his federal *habeas* petition under 28 U.S.C. § 2255[9] within the one

---

[9] "[L]imitations provisions for §§ 2254 and 2255 are nearly identical." *Patterson*, 211 F.3d at 930 (internal quotations omitted).

year grace period afforded to petitioners whose convictions were final prior to AEDPA's effective date. *Id.* at 929. Then, ten days prior to the expiration of the grace period on April 24, 1997, the petitioner was granted a motion to dismiss without prejudice so that he could obtain an experienced writ-writer. *Id.* at 929-30. The petitioner believed that he had one year from the date of dismissal to refile due to the fact that the district court had granted his motion *without prejudice* days *after* the 1997 deadline had passed. *Id.* at 930. Three days prior to the date when the petitioner believed his statute of limitations expired for refiling, he filed a motion for an extension of time which was denied. *Id.* In its denial the court expressly affirmed the petitioner's belief that the statute of limitations expired on April 30, 1998. *Id.* The petitioner then timely filed his federal *habeas* petition on April 30, only to have it dismissed as time-barred because it was not filed by April 24, 1997. *Id.* The court held that although the petition was in fact time-barred under AEDPA, the petitioner "relied to his detriment" on the district court's mistaken belief when it granted his motion to dismiss without prejudice, and when it denied his motion for extension of time, that he could refile within a year of the dismissal. *Id.* at 931-32. These circumstances were "sufficiently rare and extraordinary to warrant equitable tolling." *Id.* at 932.

If, indeed Mr. Johnson's 1996 petition was "disposed of" in November 2001 as the Magistrate Judge held, Mr. Johnson was not on notice of that fact through no fault of his own. The fact that in its 2001 writ denial the Fourth Circuit *expressly denied supervisory jurisdiction*, deferring to a nonexistent lower-court judgment, would lead any reasonably informed petitioner to believe that his application for relief had not yet been disposed of. Furthermore the fact that the 2001 writ denial (a) included the erroneous determination that Mr. Johnson's *Brady* and *Cage* claims were time-barred, and (b) referenced a failure to raise contemporaneous objections to the *Cage* instruction in the 1999 supplement that were expressly raised in the underlying

application, would support the petitioner's conclusion that his 1996 PCR application was still pending. Therefore the language of the 2001 writ denial did not put Mr. Johnson on notice that his 1996 application had been decided, if in fact it was. As soon as Mr. Johnson received clear notice that the state courts considered his 1996 application disposed of, via the Fourth Circuit's 2010 judgment and the LASC's subsequent writ denial, he pursued federal relief with "diligence and alacrity," filing his federal habeas petition within six months.

Moreover, similar to the orders granting the petitioner's motion to dismiss without prejudice and denying the petitioner's motion for a time extension in *Patterson*, the 2001 writ denial here contains clear errors upon which Mr. Johnson relied to his detriment. Just as the mistake made by the lower court in *Patterson* led the petitioner to believe he had an extra year to refile his petition, the errors outlined above in the 2001 writ denial led Mr. Johnson to believe his 1996 petition had yet to be decided. Consequently, Mr. Johnson continued to pursue remedies in state court, knowing that his federal petition was barred prior to the exhaustion of state remedies. These circumstances constitute an extraordinary circumstance warranting equitable relief.

The Court would be remiss not to note that Hurricane Katrina hit New Orleans in August 2005, two months after the LASC ordered the criminal district court to act on Mr. Johnson's 2003 application for post-conviction relief, which he argues was a supplement to his 1996 application. As previously noted, three years later the Orleans Parish Criminal District Court informed the LA Supreme Court that it had no record of the 2003 application for relief, or presumably the original 1996 application, as the only request in the record was the motion to correct an illegal sentence decided on July 2, 1996. Indeed in 2011 Mr. Johnson was informed by the trial court that his closed case file may have been destroyed. The lack of an adequate state court record in the aftermath of Hurricane Katrina is an extraordinary circumstance that further

supports this court's decision to grant equitable relief.

### ii.  Mr. Johnson exercised reasonable diligence.

In cases involving a petitioner's notice of final judgment, the Fifth Circuit has held that, "petitioners must be diligent in obtaining the status of their state habeas applications so that they may properly ascertain when the AEDPA statute ceased to toll." *Williams v. Thaler*, 400 F. App'x 886, 890 (5th Cir. 2010). However, the standard for diligence is "*reasonable* diligence" not "maximum feasible diligence." *Holland*, 560 U.S. at 653 (emphasis added) (internal citations omitted).

In *Williams v. Thaler*, an error by the clerk of court resulted in delayed notice to the petitioner that his application for state *habeas corpus* relief had been denied. *Williams*, 400 F. App'x at 887. Although his petition was denied in December 2004, he was not notified of the denial, and on three occasions when he requested information on the status of his petition, he was informed that his application was still pending. *Id.* Finally, when he requested a status update for the fourth time, he was informed that his petition had been denied fifteen months previous. *Id.* Instead of filing his federal *habeas* petition immediately, he first sought clarity from the state court on the contradictory information received. *Id.* The Court held that the petitioner had exercised reasonable diligence, and that failure to file a federal *habeas* petition while operating under the "reasonable assumption" that a state court judgment is not final does not demonstrate a lack of diligence. *Id.* at 891; *see also Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (holding that petitioner exercised reasonable diligence by making multiple inquiries as to the status of his case after the state court failed to notify him that his state habeas petition had been denied until a year later).

Here Mr. Johnson's decision not to immediately file his federal *habeas* petition

following the 2001 Fourth Circuit and LASC writ denials was based on his "reasonable assumption" that the state court had not yet disposed of his 1996 application due to the ambiguity of the Fourth Circuit order, and the history of state court error in his case.[10] Moreover, Mr. Johnson filed no fewer than *ten pro se* applications for writs of mandamus and supervisory writs from the Louisiana Fourth Circuit Court of Appeals and LASC in an attempt to obtain a judgment on his 1996 application, all prior to the assignment of counsel to his case in 2009. In addition, the petitioner wrote directly to the trial court to inquire about the status of his application on at least one occasion, and supplemented his application on three occasions as precedent developed over the course of his protracted post-conviction relief process. In this Court's opinion, Mr. Johnson exercised *more* than reasonable diligence throughout a state post-conviction process marked by confusion and court error. The extraordinary circumstances of Mr. Johnson's case, and his reasonable diligence in pursuing relief, entitle him to equitable tolling in the interest of justice.

## IV.    CLAIMS FOR RELIEF

Mr. Johnson brings three claims in his petition for *habeas corpus* relief. First, Mr. Johnson claims that the prosecution suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Second, Mr. Johnson claims that the jury instructions given at his trial were unconstitutional pursuant to *Cage v. Louisiana*, 498 U.S. 39 (1990). Third, Mr. Johnson claims that the application of a law removing the possibility of parole, probation, or suspension of sentence in his case violated the *ex post facto* clause and the due process clause. The Court grants relief on the first two claims, and denies relief without prejudice on the third,

---

[10] The criminal district court's mistaken attachment of the 1996 order denying Mr. Johnson's motion to correct an illegal sentence to its correspondence with the LASC in 1999 about Mr. Johnson's 1996 PCR application is just one example of the state court's history of error in this case. Rec. Doc. 44-1 at 34; State Rec. Vol. 4 of 8.

for the reasons that follow.

### A. The suppression of a statement by the only eyewitness in this case was unconstitutional under *Brady v. Maryland* and *Giglio v. United States*.

Where the state court has denied relief on a federal claim "it is presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011). Mr. Johnson was denied relief on his *Brady* claim in state court expressly on state procedural grounds. State Rec. Vol. 4 of 8; *State v. Johnson*, No. 00-251 (La. App. 4th Cir. 1/10/01).[11] Therefore, the state court never adjudicated the *Brady* claim on the merits, and this Court will review it *de novo*.

In *Brady v. Maryland* the Supreme Court held that, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). A *Brady* claim has three elements: (1) "the evidence at

---

[11] Mr. Johnson's *Brady* claim involves an (alleged) state procedural default. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However in "exceptional" cases where the federal court disagrees with the state court's determination that a state procedural rule was violated, and believes that the rule was substantially satisfied, the rule is considered inadequate to foreclose federal review. *See Lee v. Kemna*, 534 U.S. 362, 375, 385 n.15 (2002). In such a case the court need not conduct a cause and prejudice analysis. *Id.* Here, as previously explained, the state court was in error when it determined that Mr. Johnson's *Brady* claim was time-barred. Simple math shows that Mr. Johnson's 1996 PCR application, in which he first raised his Brady claim, was filed within the two year statute of limitations from the date his conviction became final. Therefore the state procedural rule in question, La. C.Cr.P. art. 930.8, was satisfied, rendering the state ground inadequate to foreclose this Court's review of the federal question. Under the circumstances, this Court need not examine cause and prejudice in order to move forward with its review of the merits.

issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the state, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice is shown when there is a reasonable probability that, had the evidence been disclosed at trial, the result of the proceeding would have been more favorable to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Moreover the evidentiary suppression must "[undermine] confidence in the outcome of the trial." *Id.* (internal citations omitted).

*Brady* and its progeny dictate that the prosecutor has a duty to reveal favorable evidence even in the absence of a specific request by the defense. *United States v. Agurs*, 427 U.S. 97, 110-12 (1976); *Kyles*, 514 U.S. at 37. The bar on suppression applies equally to evidence that casts a shadow on the credibility of a key witness where "reliability of a given witness may well be determinative of guilt or innocence . . . ." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (internal citations omitted).

In the present case, Mr. Johnson alleges that the suppression of a statement by the prosecution's main witness, and only eyewitness, to the police shortly after the incident violated *Brady* and *Giglio*. This Court agrees. Mr. Johnson raised two defenses at trial: (1) he was justified in killing the victim because he did so in defense of his brother and therefore should be found not guilty, and (2) he shot the victim in a sudden heat of passion and therefore the crime constitutes manslaughter rather than first or second degree murder. La. Rev. Stat. Ann. §§ 14:22, 14:31; State Rec. Vol. 2 of 8, Trial Tr. 17-21.  The prosecution countered this narrative with the testimony of Ira Bodere ("Mr. Bodere"), the main eyewitness to the incident who was also shot. At trial Mr. Bodere testified that he argued with Mr. Johnson's brother about a cigarette. State Rec. Vol. 2 of 8, Trial Tr. 104. Mr. Johnson's brother "braced hisself, like if he was going to . . .

fight" and Mr. Bodere hit him. *Id.* at 105. At that point Mr. Bodere testified that Mr. Johnson got

out of his car and shot at him. *Id.* He pretended to be hit and fell to the ground, at which point he

testified that Mr. Johnson came over and "started kicking . . . and beating" him and then shot him

again in the leg while he was "laying on [his] back on the ground." *Id.* at 105-06. The State

emphasized this point in his opening statement, describing how Mr. Johnson, "standing on top of

[Mr. Bodere] fired down on top of him hitting him." *Id.* at 9. Finally, Mr. Bodere testified that

the Johnson brothers began to leave at that point, but when the victim attempted to help Mr.

Bodere get up, Mr. Johnson "came back with the pistol . . . and he shot twice." *Id.* at 107. Mr.

Bodere added that Mr. Johnson said to another witness nearby, night watchman John Ford, "If I

had more bullets, John, I would kill you too." *Id.* at 109.

In its closing argument, the State used Mr. Bodere's statements that (a) Mr. Johnson

kicked him after he fell to the ground, (b) Mr. Johnson shot him while he was laying on the

ground, (c) after Mr. Johnson left he *came back* and shot Mr. Bodere and the victim, and (d) Mr.

Johnson threatened to kill Mr. Ford if he had more bullets, to directly counter Mr. Johnson's

manslaughter argument:

> Ladies and gentlemen, is it hot blood when you get out of your car, when you see
> someone hit your brother and you fire a warning shot, when they fall to the ground, and
> you presumably don't know whether you hit him or not because you are at that distance,
> when you walk over to him, and you and your brother kick him; that's in the heat of
> passion? Then you stand over them while they are lying on the ground, and you fire a
> shot into them—that's hot blood? Then you and your brother walk way down the
> sidewalk, someone comes over to help that man, you turn around and come back and fire
> two more shots – that's hot blood? And then ladies and gentlemen, you point the gun at
> the other man standing there, and you say to him . . . If I had any more bullets, Junior, I'd
> kill you too. That's hot blood? No, ladies and gentlemen, that's anything but hot blood.
> That's cold blood.

*Id.* at 184-85. The State's argument that Mr. Johnson's actions were not motivated by a "sudden

passion"[12] out of fear for his brother's life, but rather "specific intent to kill or cause great bodily harm"[13] as required under Louisiana's first and second degree murder statutes, depended on Mr. Bodere's testimony at trial.

The record also reflects that the jury's lengthy deliberation centered on the question of whether Mr. Johnson had specific intent to kill. The jury deliberated overnight and returned twice for further instructions from Judge Marullo *on specific intent*. *Id.* at 192, 198; State Rec. Vol. 1 of 8, May 26, 1976 minute entry. At 5:40 AM the following morning the foreman stated that the jury was unable to reach a verdict on the evidence presented. State Rec. Vol. 2 of 8, Trial Tr. at 203. Judge Marullo instructed the jury to retire and denied defense counsel's motion for a mistrial. *Id.* at 205. The jury ultimately decided that Mr. Johnson was guilty of second degree murder, returning a verdict later that afternoon after at least seven hours of deliberation. State Rec. Vol. 1 of 8, May 27, 1976 minute entry.

In fact, Mr. Bodere told the New Orleans Police Department a very different version of events on the day of the incident. In a police report dated August 27, 1974, Mr. Bodere told an officer that Mr. Johnson's brother hit him several times and then he punched Mr. Johnson's brother in the mouth. Rec. Doc. 44-1 at 92. At that point "Leonard Johnson jumped out of the automobile with a gun and shot him one time." *Id.* Mr. Bodere "fell to the ground and Leonard and Edward Johnson were still standing there and then he heard two more shots and he saw Richard McClarity fall to the ground and Leonard and Edward Johnson running to their automobiles." *Id.* In this version, Mr. Johnson did not kick or shoot Mr. Bodere while he was on the ground, nor did Mr. Johnson return after leaving to shoot Mr. Bodere and the victim. This police report was not presented at trial.

---

[12] La. Rev. Stat. Ann. § 14:31.
[13] La. Rev. Stat. Ann. §§ 14:30, 14:30.1.

Here, the suppressed evidence satisfies the *Brady* elements. First, the police report is favorable to Mr. Johnson because it is exculpatory, supporting Mr. Johnson's defense of "sudden passion" manslaughter in defense of his brother. It is also impeaching because it casts a shadow on the credibility of the government's main witness and only eyewitness. *Giglio*, 405 U.S. at 154.

Second, the police report was suppressed by the State because it was available at the time of trial, whether or not the prosecution intentionally suppressed it or was aware of its existence. The Supreme Court has held that "the prosecutor is responsible for any favorable evidence known to the others acting on the government's half in the case, including the police." *Strickler v. Greene*, 527 U.S. 263, 275 n. 12 (1999) (internal quotations omitted). This duty applies "even when the accused fails to specifically request such evidence. *Id*. at 280. *See also*, *Mahler v. Kaylo*, 537 F.3d 494, 499 (5th Cir. 2008). Mr. Johnson's trial attorney requested in a Bill of Particulars that the State disclose whether it had in its possession statements by persons who had been interviewed by the State or its agents in relation to the crime. State Rec. Vol. 1 of 8. In a Prayer for Oyer, trial counsel also requested that the State produce *Brady* material, including written statements or interviews reduced to writing obtained by the State through police investigative procedure from. . . any other person having knowledge or information regarding the charge. . ." *Id*. However, the State never provided the police report in question.

Third, the suppression of the police report clearly prejudiced Mr. Johnson, considering the jury's lengthy deliberations over the question of specific intent, and the State's near exclusive reliance on Mr. Bodere's testimony to support its argument on that point. Had the police report been presented at trial, it would have lent support to Mr. Johnson's "heat of the moment" manslaughter defense and cast doubt upon the credibility of the government's key and only

eyewitness, creating a reasonable probability that the jury would have returned a different verdict. Indeed, the Fifth Circuit has held that the "duty to provide favorable evidence includes impeachment evidence as well as exculpatory evidence." *Mahler*, 537 F.3d at 499.

Indeed, numerous courts have found that suppressed witness statements contained in police reports constitute *Brady* violations when the statements could have been used for impeachment purposes. In *Mahler v. Kaylo*, the Fifth Circuit considered a similar situation in which suppressed witness statements to police conflicted with the prosecution's version of events. In *Mahler*, the petitioner had been convicted of manslaughter after firing a gun during an altercation between several people. After the trial, newly discovered witness statements and supplemental police reports came to light that contradicted testimony given at trial that there was no ongoing struggle between the petitioner's brother and the victim when the petitioner shot at the victim. 538 F.3d at 500-03. The Fifth Circuit explained that these statements, which suggested that the struggle was ongoing when the shot was fired, "could have been used for impeachment purposes and that, given their centrality to [the petitioner's] defense, there exist[ed] a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. In *Johnson v. State*, the Supreme Court of Tennessee found that a withheld police report which called into question "a key element of the prosecution's versions of events" was a violation of *Brady*. 38 S.W.3d 52, 57-58 (Tenn. 2001) (internal quotations omitted).[14]

As in these cases, the suppressed police report contained information from a witness

---

[14] In *Trevino v. Thaler*, the Fifth Circuit found that a suppressed witness statement which contradicted other statements by that witness did not violate *Brady*. However, that case is distinguishable. As the Fifth Circuit noted, the defense attorney had access to a police report which accurately summarized all of that witness's statements, including the one that had been suppressed. 449 Fed.Appx. 415, 421 (5th Cir. 2011).

statement that contradicted the prosecution's version of events. Given the jury's lengthy deliberation over the question of specific intent and its initial inability to reach a verdict, the suppression of favorable eyewitness testimony in this case certainly "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434. Therefore the Court agrees with the petitioner that the government's suppression violated his constitutional rights, and *habeas corpus* relief must be granted.

**B. The jury instructions given in this case are unconstitutional under *Cage v. Louisiana***

Like his *Brady* claim, Mr. Johnson's *Cage* claim was raised in the state court post-conviction relief process. Therefore the Court must first examine whether this claim is subject to federal review. For the reasons below, the Court determines that review is proper.

The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Cage v. Louisiana*, 498 U.S. 39, 39 (1990). (quoting *In re Winship,* 397 U.S. 358, 364 (1970)). In *Cage*, the Supreme Court held that the use of the phrases "actual substantial doubt," "grave uncertainty," and "moral certainty" in a jury instruction on the meaning of "reasonable doubt" violated due process. *Id.* The Court subsequently held that unconstitutional jury instructions always invalidate a conviction and are not subject to harmless error analysis because where the instructions are constitutionally deficient "there has been no jury verdict within the meaning of the Sixth Amendment." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993)

Mr. Johnson was denied relief on his *Cage* claim in state court on state procedural grounds on multiple occasions.[15] First, in its 1992 opinion on Mr. Johnson's out-of-time appeal

---

[15] To avoid confusion, all references to *Cage* in this section refer to Mr. Johnson's claim under *Cage v. Louisiana*, 498 U.S. 39 (1990), not his claim under *State v. Cage*, 337 So. 2d 1123 (La. 1976), which were not raised in his federal *habeas* petition.

the Louisiana Fourth Circuit Court of Appeals held that *Cage* was not applicable to the

petitioner's case because it was a "new rule" and therefore non-retroactive, citing *Skelton v.*

*Whitley*, 950 F.2d 1037, 1043 (5th Cir. 1992). *See Teague v. Lane,* 489 U.S. 288 (1989) (holding

that with certain exceptions, new constitutional rules of criminal procedure should not be applied

retroactively to cases on collateral review). State Rec. Vol. 2 of 8. Mr. Johnson raised the *Cage*

claim in his 1996 PCR application. In his 1999 supplemental PCR he argued for the retroactivity

of *Cage* based on the recently-decided Fifth Circuit case *Humphrey v. Cain*, 138 F.3d 552, 553

(5th Cir. 1998) (holding that relief based on *Cage* is available in federal *habeas corpus* to state

prisoner whose criminal conviction was final when that case was decided). State Rec. Vol. 4 of

8. In its 1999 response to the LASC's mandamus order, the criminal district court held that it

would delay consideration of Mr. Johnson's *Humphrey* claim until a similar pending case in the

LASC was decided. Thus, there was no decision on the merits at that time. *Id.*

The state courts did not revisit the *Cage* claim until 2001 when the Fourth Circuit held

that the claim was procedurally barred by the two-year statute of limitations for post-conviction

relief applications articulated in La. C.Cr.P. art. 930.8. State Rec. Vol. 4 of 8. Though the state

procedural rule contains an exception for new constitutional rules that are retroactively

applicable, the court reasoned that *Cage* was not retroactively applicable in this case since the

LASC had recently held that *Humphrey*'s holding on *Cage* retroactivity was not binding on

Louisiana courts. *State v. Penns*, 758 So.2d 776 (La. 1999). Thus the state courts reached no

decision on the merits of the *Cage* claim in 2001.

Mr. Johnson reasserted his *Cage* claim in a motion to file a single-issue post-conviction

application in July 2009. State. Rec. Vol. 6 of 8. In 2010 the Fourth Circuit gave its final word on

that claim, holding that in 2001 that same court had indeed decided that Mr. Johnson "was not

entitled to relief *on the merits*" due to the nonretroactivity of *Cage*. State Rec. Vol. 6 of 8; *State v. Johnson*, No. 2009-K-1698 (La. App. 4th Cir. 1/25/10) (emphasis added). The court went on to hold that any *Cage* claim raised in the 2009 motion was time-barred under La. C.Cr.P. 930.8 and repetitive under La. C.Cr.P. 930.4. *Id*.

Because Mr. Johnson's *Cage* claim was ultimately dismissed on state procedural grounds and never decided on the merits, this Court is entitled to conduct *de novo* review.[16] However, out of deference to the Fourth Circuit's apparent belief that it denied Mr. Johnson relief on the merits, the Court will apply the test articulated in AEDPA governing federal review of state decisions on the merits. Here, the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Ultimately *Humphrey*, *Penns*, and the retroactivity of *Cage* generally are irrelevant to the present set of facts because Mr. Johnson was granted an out-of-time appeal that was pending at the time that *Cage* was decided.[17]

A new rule for the conduct of criminal prosecutions "is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). An out of time appeal resets the date when the petitioner's conviction became final. *See Jimenez*, 555 U.S. at 119. The Fifth Circuit has held unequivocally that *Cage* applies to pending out-of-time appeals. *See Cockerham v. Cain*, 283 F.3d 657, 661-62 (5th Cir. 2002)

---

[16] See, *supra* note 9. Although the Fourth Circuit claimed that Mr. Johnson's *Cage* claim, like his *Brady* claim, was ultimately time-barred under a state procedural rule, this rule is not "adequate" to foreclose federal review. Simple math shows that Mr. Johnson's 1996 PCR application, in which he raised *Cage*, was timely under La. C.Cr.P. 930.8. Mr. Johnson could not have raised *Humphrey* in 1996 because that case was not decided until 1998.

[17] Mr. Johnson was granted his out of time appeal pursuant to an order from this Court on October 22, 1990. *See State v. Johnson*, 598 So. 2d 1288, 1289 (La. 4th Cir. 1992). *Cage* was decided on November 13, 1990.

("[B]ecause Cockerham's out of time appeal was not resolved until after *Cage* was decided, Cockerham may avail himself of the benefit of *Cage*."). Louisiana courts have also held that a new rule applies to a case pending on an out-of-time appeal at the time the new rule is decided. *See State v. Fournier*, 395 So. 2d 749, 750 (La. 1981). Therefore, Mr. Johnson's case does not involve a question of the retroactive applicability of *Cage*, as his case was still pending on the date that *Cage* was decided.

In light of these circumstances, this is a case where "the state court identifie[d] the correct governing legal principle . . . but unreasonably applie[d] that principle to the facts of the prisoner's case." *Hoffman*, 752 F.2d at 437. Here the state court identified the applicable principles in *Cage*, *Humphrey* and their progeny, but applied them incorrectly to the present set of facts by failing to consider the effect of the out-of-time appeal. Therefore AEDPA does not bar this Court's review.

Having determined that *Cage* applies to the Mr. Johnson's case, the Court moves on to the merits of his claim. A deficient jury instruction deprives the defendant of his right to a jury trial, and as such "unquestionably qualifies as structural error" warranting relief. *Sullivan*, 508 U.S. at 280 (internal quotations omitted). The jury instruction found unconstitutional in *Sullivan* and deemed "essentially identical to one held unconstitutional in *Cage v. Louisiana*" reads as follows. *Id.* at 277.

> If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one; that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a **grave uncertainty**, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a **moral certainty** of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point

indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.

A reasonable doubt is not a mere possible doubt. It should be an **actual or substantial doubt**. It is such a doubt as a reasonable person would seriously entertain. It is a serious doubt, for which you could give good reason.

*State v. Sullivan*, 596 So. 2d 177, 186 n.3 (La. 1992).

In Mr. Johnson's case, Judge Marullo gave the following jury instruction on reasonable doubt:

If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to **grave uncertainty**, raised in your minds by reason of the unsatisfactory character of evidence; one that would make you feel that you had not an abiding conviction to a **moral certainty** of the defendant's guilt. If, after giving a fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.

The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is encumbent upon the State to prove the offense charged, or legally included in the Information, to your satisfaction and beyond a reasonable doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, for which you could give good reason.

Rec. Doc. 44-1 at 89-90; State Rec. Vol. 1 of 8. The jury instruction is virtually identical to the one condemned as unconstitutional in *Sullivan*, and it contains the "particularly egregious terms" identified in *Cage*, "grave uncertainty" and "moral certainty." *Morris v. Cain*, 186 F.3d 581, 587 (5th Cir. 1999). In its 1992 decision on Mr. Johnson's out-of-time appeal the Fourth Circuit admitted that "[t]he *Cage* instruction, which defined reasonable doubt as one giving rise to 'great [sic] uncertainty' and one that would make you feel morally uncertain as to defendant's guilt, is included in its entirety in the instruction at issue herein." *State v. Johnson*, 598 So. 2d 1288, 1292

(La. App. 4th Cir. 1992).[18] Therefore, on its face, the jury instruction delivered in Mr. Johnson's case violates *Cage*.

However, in reviewing the jury instructions for constitutional infirmity, the court must consider "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotations omitted). In a narrow subset of cases, unconstitutional language in a jury instruction may not be fatal to a conviction where the instructions were nonetheless "clear enough for the jury to understand the proper standard to apply." *Morris*, 186 F.3d at 587 (citing *Victor v. Nebraska*, 511 U.S. 1 (1994)). For this exception to apply, the unconstitutional phrase must be closely followed by the clarifying language. *Id.*[19] Indeed, "[g]iven the length and the complexity of any reasonable doubt instruction, . . . it is dispositive, or at the very least significant, that the placement of any unconstitutional terms be such as to ameliorate their effect virtually *instantaneously*." *Id.* (emphasis added). It follows that where the unconstitutional phrases are "isolated from the clarifying language" the instructions require reversal. *Id.*

Here the unconstitutional terms, as in *Sullivan* and *Morris*, are isolated from clarifying language that might lead the jury to nonetheless apply the correct standard. Absent mitigating or qualifying language, it is reasonably likely that the jury applied the facially unconstitutional instruction in a way that indeed violated the constitution. Therefore, Mr. Johnson's petition for *habeas* relief must be granted.

**C.   The LA Supreme Court's denial of relief on Mr. Johnson's illegal sentence claim rests on an adequate and independent state ground, barring federal review at this**

---

[18] As previously stated the Fourth Circuit dismissed the Cage claim because of non-retroactivity.
[19] In *Victor*, "although the challenged instruction used the phrase 'moral certainty,' it did so while cautioning the jurors that they must possess an abiding conviction of the defendant's guilt; indeed, the trial court, **in the same sentence**, equated 'moral certainty' with certainty which would preclude hesitation to convict." *Morris*, 186 F.3d at 587 (emphasis added).

**time.**

In 1979 the Louisiana legislature removed the possibility of parole for second-degree murder. La. Rev. Stat. Ann. § 14:30.1, as amended by 1979 La. Acts No. 74, § 1. Mr. Johnson claims that this law was applied retroactively to him, and that he should have been eligible for parole after 20 years as the law mandated at the time of the crime. Mr. Johnson argues that this retroactive application violates the Constitution's *ex post facto* Clause.

At the time Mr. Johnson filed the present *habeas* petition the State correctly argued that Mr. Johnson had failed to exhaust state remedies on this claim, as the issue was pending on appeal to the LASC at the time. *See* 28 U.S.C. 2254(b)(1)(a) (a petitioner seeking *habeas corpus* relief must first exhaust state court remedies). On March 2, 2012, the LASC held that Mr. Johnson was not eligible for parole because of the commutation proviso of La. Rev. Stat. Ann. § 15:574.4(B), and did not reach Mr. Johnson's federal constitutional claim. *State v. Johnson*, 84 So. 3d 540 (La. 2012).

The relevant state statute dictates that "no prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years." La. Rev. Stat. Ann. § 15:574.4. The LASC has affirmed that "those serving life sentences must first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the Board of Pardons, before becoming eligible for parole consideration." *Bosworth v. Whitley*, 627 So. 2d 629, 632 (La. 1993). Accordingly, this Court reads the LASC opinion as a judgment that Mr. Johnson is presently barred from bringing his illegal sentence claim in state court due to his failure to meet certain state procedural requirements for parole eligibility.[20] A federal district court may not review a question of federal

---

[20] The Court notes that Mr. Johnson's failure to petition the governor for clemency does not

law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment, whether the state law is substantive or procedural. *Coleman*, 501 U.S. at 729. Here, the LASC's denial of relief is based on a state procedural rule that is independent of any federal constitutional claim, and adequate because it is "firmly established and regularly followed" by the state courts. *Lee*, 534 U.S. at 376; *see Bosworth*, 627 So. 2d at 632; *Richardson v. Louisiana Dep't of Pub. Safety & Corr.*, 627 So. 2d 635, 636 (La. 1993) (holding that where petitioner alleged that her life sentence "without benefit of parole" was illegal, parole eligibility could not be considered until the life sentence has been commuted to a fixed number of years pursuant to § 15:574.4).

In the case of a state procedural default, the petitioner must show good cause for the default and actual prejudice from the violation of federal law. *Coleman*, 501 U.S. at 750. The "cause" prong is satisfied only by "something *external* to the petitioner, something that cannot fairly be attributed to him." *Id.* at 753. While the prejudice from the alleged violation of the *ex post facto* clause is clear, Mr. Johnson has not demonstrated any external cause for failure to satisfy the state procedural requirement. Therefore the Court is barred from reviewing the illegal sentence claim at this time and will deny relief without prejudice.

## V.    CONCLUSION

The Court hereby declines to follow the Magistrate Judge's Report and Recommendation, and determines that Mr. Johnson's *habeas corpus* petition was entitled to statutory and equitable

---

constitute a failure to exhaust state court remedies thus foreclosing federal review. See *Smith v. State of Miss.*, 478 F.2d 88, 92 n.6 (5th Cir. 1973) (disagreeing with district court' holding that *habeas* petitioner failed to exhaust state remedies by not applying for executive clemency and stating that "any failure to seek executive clemency or pardon, clearly an act of grace, from the governor . . . has not the slightest relation to questions involving the assertion of constitutionally guaranteed rights.") The LASC order constitutes a final judgment on the merits on the illegal sentence claim and thus the exhaustion requirement has been met.

tolling until November 19, 2010. Therefore his petition filed on May 17, 2011 fell within the one-year AEDPA statute of limitations and is not time-barred. Moreover the Court finds that Mr. Johnson's constitutional rights were violated under *Brady* and *Cage*.

Accordingly,

IT IS ORDERED the petition of Leonard Johnson for *habeas corpus* relief is GRANTED on the basis of his *Brady* and *Cage* claims and judgment is to be entered in favor of the petitioner and against the State.

IT IS FURTHER ORDERED that relief based on Mr. Johnson's illegal sentence claim is DENIED without prejudice.

IT IS FURTHER ORDERED that the State shall either retry the petitioner within 120 days of this order or dismiss the charges. The State shall notify the petitioner and the Court of his intention within 60 days of this ruling.

New Orleans, Louisiana this 17th day of December, 2014.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**